■ MAXON INTERNATIONAL INC., Respondent-Appellant, v INTERNATIONAL HARVESTER COMPANY, Appellant-Respondent. — Appeals (1) from a judgment of the Supreme Court, entered February 21, 1980 in Cortland County, upon a verdict rendered at a Trial Term (Yesawich, Jr., J.), in favor of plaintiff and (2) from an order of the Supreme Court at Special Term (Yesawich, Jr., J.), entered February 21, 1980 in Cortland County, which denied plaintiff's motion for preverdict interest pursuant to CPLR 5001. Defendant, a manufacturer of motor trucks and other equipment, markets its products through company-owned stores and dealers under dealership agreements. Plaintiff, a corporation formed and financed in 1967 under defendant's codealer program, entered into agreements with defendant for the operation of a dealership in Cortland, New York, commencing in August, 1967. The Cortland facility previously had been operated as a company-owned store with plaintiff's president as its manager. Through the efforts of its president, plaintiff began selling defendant's motor truck chassis and cabs to the Cortland facility of Agway, Inc., where Agway added various types of bodies for use by Agway dealers throughout the northeast. Plaintiff continued to sell defendant's trucks to Agway through September, 1970, and, as an accommodation to Agway, plaintiff processed Agway's warranty claims with defendant, including those on many of the trucks used outside the Cortland area. After September, 1970, Agway stopped purchasing trucks from plaintiff, and Agway officials advised plaintiff's president that continuing warranty problems and more favorable consignment arrangements with Ford and Chevrolet were the reasons for Agway's decision. Thereafter, Agway contacted defendant's Chicago office, resulting in a proposal by defendant's local zone manager that Agway purchase trucks directly from defendant's Syracuse branch. Plaintiff's president was advised of the arrangement in January, 1972, and the first order was placed by Agway with defendant the following month. According to Agway officials, the trucks were purchased from defendant on a consignment basis and the warranty problems previously encountered did not arise under the arrangement with defendant. Plaintiff terminated its dealership agreement with defendant in 1974 and thereafter commenced this action, asserting a number of causes of action seeking to recover damages for its loss of the Agway business. At trial, two theories of liability were sent to the jury: that defendant breached its dealership agreement and that defendant tortiously interfered with the business relationship between Agway and plaintiff. The jury returned a verdict in favor of plaintiff in the amount of $140,000. We hold that there is insufficient

proof in the record to support the jury's verdict under either theory of liability. With respect to the breach of contract cause of action, the dealership agreements specifically provided that defendant could sell the goods covered by the agreements to, *inter alia,* "fleet operators" and "manufacturers to be used by them in or with equipment of their respective manufacturers or assembly". In our view, the record conclusively establishes that Agway, which annually maintained a fleet of some 3,000 to 4,000 trucks during the period at issue, and purchased only the chassis and cabs of defendant's trucks, met either definition. Although the dealership agreements may have contained an implied covenant of good faith and fair dealing *(Kirke La Shelle Co. v Armstrong Co.,* 263 NY 79, 87), where, as here, defendant did precisely what the contract permitted, any question of bad faith as claimed by plaintiff is irrelevant *(Mec-Guy Realty Corp. v Amerada Hess Corp.,* 69 AD2d 812, 813). In any event, there is no proof of bad faith on defendant's part. With respect to the tort claim, the theory submitted to the jury, without exception, was that "defendant engaged in unfair competition by appropriating [plaintiff's] customer" and that to succeed plaintiff must prove that it had an economic relationship with Agway and that defendant "intentionally interfered with that relationship by using unfair methods". There is insufficient proof in the record from which the jury reasonably could find defendant liable under this theory. Plaintiff contends that defendant appropriated its customer by offering Agway preferential warranty treatment and a consignment sales plan. The proof, however, shows that Agway stopped purchasing trucks through plaintiff in September, 1970 and began ordering trucks directly from defendant some 16 months later as the result of negotiations initiated by Agway. There is no proof that defendant used any unfair or dishonest means in acquiring Agway as its customer or that it was in any way responsible for plaintiff's loss of Agway as a customer in September, 1970. Nor is there any proof, as plaintiff suggests, that defendant somehow used its position of dominance in its relationship with plaintiff to appropriate plaintiff's customer (see *A. S. Rampell, Inc. v Hyster Co.,* 3 NY2d 369, 376-377). Finally, we also find plaintiff's proof of damages inadequate. Plaintiff seeks to recover lost profits, and as explained in *R & I Electronics v Neuman* (66 AD2d 836, 838): "Determination of prospective profits is inherently problematical and difficult of proof. Accordingly, courts ought not to be 'too precise and exacting in regard to the evidence upon which to base a claim for damages resulting from loss of future profits' * * * However, in the case at bar, although proof was offered of gross receipts for past years, only scant evidence was introduced to show expenses of performing the contract." Similarly, here, the jury was left to speculate as to plaintiff's expenses directly related to its sales of trucks to Agway. For the foregoing reasons, the judgment must be reversed and the complaint dismissed. Judgment reversed, on the law and the facts, with costs, and complaint dismissed. Appeal from order, entered February 21, 1980, dismissed, as academic, without costs. Mahoney, P. J., Kane, Casey, Weiss and Herlihy, JJ., concur.