Lester **CHAMBERS, d/b/a The Chambers Brothers, Carl Gardner, d/b/a The Coasters, Bill Pinkney, d/b/a The Original Drifters, and Tony Silvester, d/b/a The Main Ingredient, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,**

v.

**TIME WARNER, INC., in its own right and as successor in interest to Warner Bros. Records, Atlantic Records, Elektra Records, and associated labels, Sony Corporation of America, in its own right and as successor in interest to Columbia Records and associated labels, BMG Entertainment, Inc., in its own right and as successor in in-**

terest to RCA Records, Arista Records, and associated labels, Universal Music Group, Inc., in its own right and as successor in interest to MCA Records, Polydor Records, and associated labels, and MP3.Com, Inc., Defendants–Appellees.

Docket No. 01–7010.

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 2001.

Decided Feb. 21, 2002.

Mark C. Rifkin, Feldman & Rifkin, Jenkintown, PA (Frederick Isquith, Wolf Haldenstein Adler Freeman & Herz, New York, NY, Lawrence E. Feldman, Feldman & Rifkin, Jenkintown, PA, on the brief), for Plaintiffs–Appellants.

Katherine B. Forrest, Cravath, Swaine & Moore, New York, NY (Jay Cohen, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, Charles B. Ortner, Proskauer Rose, New York, NY, Andrew H. Bart, Susan Arden, Pryor, Cashman, Sherman & Flynn, New York, NY, and Russell J. Frackman, Jeffrey D. Goldman, Mitchell, Silberberg & Knupp, Los Angeles, CA, on the brief), for Defendants–Appellees Time Warner, Inc., Sony Corporation of America, BMG Entertainment, Inc., and Universal Music Group, Inc.

Jeffrey A. Conciatori, Orrick, Herrington & Sutcliffe, New York, NY (Michael B. Carlinksy, Lisa T. Simpson, and Margret M. Caruso, on the brief), for Defendant–Appellee MP3.Com.

Before: CARDAMONE, POOLER, and B.D. PARKER, Jr., Circuit Judges.

B.D. PARKER, JR., Circuit Judge.

Plaintiffs Lester Chambers, Carl Gardner, Bill Pinkney, and Tony Silvester, who are recording artists, appeal from the December 8, 2000 judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge* ) dismissing their Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

which relief could be granted. The District Court found that plaintiffs' recording contracts with defendants Time Warner, Inc., Sony Corporation of America, BMG Entertainment, Inc., and Universal Music Group, Inc. (collectively, the "Record Companies") effectively transferred their rights in digital versions of their recordings to the Record Companies and thus barred their federal copyright infringement claims. The court also determined that defendant MP3.com, Inc.'s use of plaintiffs' names on its Internet website was a fair use, which barred plaintiffs' Lanham Act claim. The court dismissed related state law claims without prejudice. Because we find that the District Court, in ruling on defendants' motions to dismiss, improperly considered materials outside the pleadings on the copyright claims and failed to sufficiently consider the Lanham Act claim, we vacate and remand.

## BACKGROUND

In this putative class action, plaintiffs are recording artists from four musical groups commonly classified in the rhythm and blues genre: Lester Chambers of The Chambers Brothers, Carl Gardner of The Coasters, Bill Pinkney of The Original Drifters, and Tony Silvester of The Main Ingredient. They recorded performances of musical works under contracts with predecessors of the Record Companies from the 1950s through the mid–1990s. Pursuant to these contracts, plaintiffs assigned ownership rights, including copyrights, in their sound recordings to the Record Companies in exchange for the right to royalties from the sale of the recordings. Each Record Company purportedly sells copies of each plaintiff's recordings via licenses or cross-licenses.

Plaintiffs allege that the advent of the "digital revolution" brought about profound changes in the way music is recorded, distributed, and sold. When plaintiffs' original analog master recordings, which served as the basis for the production of vinyl records and cassette tapes, were remastered digitally and placed on compact discs ("CDs") by the Record Companies, they became susceptible to rapid reproduction on computer as digital audio files, with no degradation in sound quality. Once the files were placed on the Internet, they could be downloaded to a computer or simply broadcast over the Internet in a process called "streaming." As a result, plaintiffs allege, unauthorized "clones" of their digital recordings are competing with sales of tangible recordings in the vinyl, cassette, and CD formats, thereby reducing their royalty stream under their contracts with the Record Companies.

Since mid-January 2000, defendant MP3.com, Inc. allegedly has converted plaintiffs' digital recordings into a compressed digital format known as "MP3 format," and has offered a service on its Internet website that enables consumers to download or stream intangible versions of the recordings as MP3 format files. Further, to promote its services and facilitate the sale of plaintiffs' recordings, MP3.com purportedly uses plaintiffs' names and likenesses without their consent or authorization. In what plaintiffs refer to as the "new music business model" that MP3.com epitomizes, revenues are generated through subscriptions, advertisements, and ancillary services such as cross-promotions and stock offerings rather than by record sales.[1] Pl. Reply Br. at 19.

---

1. In May 2001, during the pendency of this appeal, Vivendi Universal, parent corporation of defendant Universal Music Group, Inc., acquired MP3.com. *See* John Carreyrou & Anna Wilde Matthews, *Vivendi Universal To*

The Amended Complaint sets forth numerous federal and state law claims. Plaintiffs assert a federal copyright claim in which they request a "determination that [their] contracts [with the Record Companies] did not grant to the [Record Companies] or anyone else the right to sell or authorize others to sell digitized versions of their pre 1996 artistic performances on the Internet, or to 'digitally download' or 'stream' work authored by plaintiffs, or to utilize their names and likeness [sic] in connection with such activities...." [2] Am. Compl. ¶ 41. In the alternative, plaintiffs claim beneficial ownership rights in their recordings under New York state law and section 501(b) of the Copyright Act of 1976, 17 U.S.C. § 501(b). They seek royalties and licensing fees in connection with the digital exploitation of their recordings, and claim that New York law entitles them to an equitable lien on the proceeds of this exploitation. Plaintiffs also assert a claim under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), against MP3.com arising out of its use of plaintiffs' names and likenesses on its website. Further, plaintiffs assert state law claims for (i) unfair competition and violation of the New York Civil Rights Law arising from the use of their names and likenesses, (ii) negligence and gross negligence for the risk of music piracy arising from the Record Companies' release of plaintiffs' recordings on CD beginning in the 1980s, and (iii) breach of contractual and fiduciary duties arising from the failure of the Record Companies to ensure that plaintiffs received royalties for the exploitation of digital versions of their recordings.

After limited pre-answer discovery, plaintiffs moved for class certification and defendants moved to dismiss under Rule 12(b)(6). The Record Companies' moving papers contained several affidavits. The affidavit of Katherine B. Forrest attached thirteen contracts between plaintiffs and the Record Companies signed between 1955 and 1989. An additional contract, between plaintiff Bill Pinkney and Atlantic Records dated June 1, 1992, was attached to the affidavit of Silda Palerm.

On December 4, 2000, the District Court granted defendants' motions. *Chambers v. Time Warner, Inc.*, 123 F.Supp.2d 198 (S.D.N.Y.2000). In its opinion, the District Court considered the contracts attached as exhibits to the Forrest and Palerm Affidavits. The court also considered several unsigned drafts of a collective bargaining agreement between record producers and the American Federation of Television and Radio Artists ("AFTRA"), to which plaintiffs belong. The agreement is called the AFTRA Code of Fair Practice for Phonograph Recordings, and the drafts (the "AFTRA Codes") initially were submitted in connection with plaintiffs' class certification motion. *Id.* at 201–02. The first AFTRA Code was enacted in the mid 1950s, and there have been several amendments, most recently in 1997. *See Moore v. Am. Fed'n of Television and Radio Artists*, 216 F.3d 1236, 1239 (11th Cir.2000), *cert. denied*, 533 U.S. 950, 121 S.Ct. 2592, 150 L.Ed.2d 751 (2001). The Codes govern

---

*Buy MP3.com for $372 Million in Cash and Stock*, Wall St. J., May 21, 2001, at A3.

**2.** The Digital Performance Right in Sound Recordings Act of 1995 ("DPRSRA"), effective as of February 1, 1996, permits the holder of a copyright in a sound recording to perform the work publicly by means of a digital audio transmission. 17 U.S.C. § 106(6) (2000). Plaintiffs assert that the DPRSRA is not retroactive and therefore would not enable the Record Companies to digitally distribute recordings fixed in a tangible medium prior to the Act's effective date, even assuming that the contracts gave the Record Companies digital rights in the first instance.

the "minimum wages and working conditions of phonograph recording artists." Each "contain[s] the minimum terms and conditions for the engagement of [artists] for the purpose of making phonograph recordings." These terms relate to, *inter alia*, union membership, compensation, recording sessions, and certain health and retirement funds to which producers are obligated to contribute. They also prescribe common language to be incorporated into contracts between artists and record producers, binding them to "all the terms and provisions of the AFTRA Code" and resolving "any inconsistency between [the contracts] and [the Code]" in favor of the Code, unless the contractual terms are more favorable to the artists.

The District Court concluded that, because the recording contracts in question broadly conveyed to the Record Companies the right to manufacture and distribute recordings "by any method whatsoever, whether known at the time or 'hereafter to become known,'" plaintiffs' interests in digital versions of their recordings, including copyrights, belonged to the Record Companies. *Chambers*, 123 F.Supp.2d at 200 (quoting contracts). The court determined that this conclusion was not altered by the AFTRA Codes because they did not narrow or override the broad assignment set forth in the recording contracts: The Codes, the court concluded, "merely set forth the minimum required terms for the recording contracts" and were "in no way intended to prohibit broader provisions or definitions." *Id.* at 201. Further, the court concluded that MP3.com's use of plaintiffs' names on its website was fair, thus barring their Lanham Act claim. *Id.* at 202. Finally, the court declined to exercise supplemental jurisdiction over the state law claims, which were dismissed without prejudice. *Id.* This appeal followed.

## DISCUSSION

### I.

We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000).

■ Plaintiffs contend that, in deciding the motion to dismiss their copyright claims, the District Court improperly considered the Record Companies' affidavits and the contracts attached to them, while failing to consider other pertinent evidence in the record or material which could have been submitted had the motion to dismiss been converted to one for summary judgment. When material outside the complaint is presented to and not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion...." Fed.R.Civ.P. 12(b). For purposes of this rule, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991)); *see* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part

thereof for all purposes."). Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint. *Int'l Audiotext*, 62 F.3d at 72.

 In *Cortec*, we explored the question of what documents a district court may consider when disposing of a Rule 12(b)(6) motion. We stated that, generally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered. *Cortec*, 949 F.2d at 48. Accordingly, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.* In the context of claims arising from an unprofitable corporate acquisition, we found that the district court properly considered certain documents related to the purchase of shares, because they were "documents plaintiffs had either

in [their] possession or had knowledge of and upon which they relied in bringing suit." *Id.* We considered this standard again in *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993), where we stated in dicta that, on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.[3] *See Cortec*, 949 F.2d at 47–48.

 The contracts considered by the District Court in this case comfortably meet this test because they are integral to the Amended Complaint.[4] *See Furman v.*

---

**3.** This standard is congruent with that of our sister Circuits. *See, e.g., Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001) ("When the complaint relies upon a document ... such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss."); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000) (court may consider materials "referred to in the plaintiff's complaint and ... central to her claim") (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999) (same); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998) (court may consider documents "upon which the plaintiff's complaint necessarily relies") (citing *Cortec*, 949 F.2d at 47); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (court may consider "document integral to or explicitly relied upon in the complaint"); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539,

546 n. 9 (8th Cir.1997) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (quoting *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir.1993)); *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir.1997) (court may consider document "referred to in the complaint and ... central to the plaintiff's claim"); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, Attach. 1369 (11th Cir.1997) (per curiam) (same) (citing *Venture Assocs.*, 987 F.2d at 431); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir.1994) (court did not err by considering document where it was referred to in the complaint) (citing *Cortec*, 949 F.2d at 47–48).

**4.** The Amended Complaint is replete with references to the contracts and requests judicial

*Cirrito,* 828 F.2d 898, 900 (2d Cir.1987) (relying on partnership agreement and contract of sale in action by minority against majority members of partnership where such agreements were "integral parts of appellants' claim and of the record before us"). The same, however, cannot be said for the AFTRA Codes. The Amended Complaint does not refer to the Codes, plaintiffs apparently did not rely on them in drafting it, and none of the Codes submitted to the court were signed by the Record Companies.[5] Although the text of the Codes suggests that they might have been incorporated into the contracts, the record does not indicate whether this actually occurred. Consequently, the Codes were not part of the Amended Complaint. Further, the parties disagree as to whether and how the Codes relate to or affect the contractual relationships at issue. One possibility is that they were irrelevant. Another is that they were intended to modify the recording contracts.

■ Once the District Court was presented with matters outside the pleadings, Rule 12(b) afforded two options. The court could have excluded the extrinsic documents. Because it elected not to do so, however, the court was obligated to convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material

contemplated by Rule 56. *See Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972) (per curiam); *Friedl v. City of New York,* 210 F.3d 79, 83–84 (2d Cir.2000); *Morelli v. Cedel,* 141 F.3d 39, 45–46 (2d Cir.1998). Therefore, the court erred by receiving and reviewing the Codes, an option barred by Rule 12(b). This conversion requirement is "strictly enforced" whenever a district court considers extra-pleading material in ruling on a motion to dismiss. *Friedl,* 210 F.3d at 83 (quoting *Amaker v. Weiner,* 179 F.3d 48, 50 (2d Cir.1999)).

Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (2d ed. 1990 & Supp.2001) (stating that the conversion requirement of Rule 12(b) was designed to resolve the conflict among those federal courts that favored consideration of extra-pleading material and those that believed the procedure was designed only to test the sufficiency of the pleading); Fed.R.Civ.P. 12 Advisory Committee Notes, 1946 Amendment (reflecting same); *cf. Salahuddin v. Cuomo,* 861

interpretation of their terms. Am. Compl. ¶¶ 13–14, 18–21, 31, 40–41, 51–52, 56(k). Plaintiffs also state on appeal that their action is grounded in "the absence of a 'digital royalty' in the putative class representatives' contracts." Pl. Reply Br. at 14 n. 10.

**5.** Courts have declined to consider unsigned documents in ruling on motions to dismiss. *See, e.g., Murphy v. Cadillac Rubber & Plastics, Inc.,* 946 F.Supp. 1108, 1115 (W.D.N.Y. 1996) (stating that unsigned letter agreement attached to complaint could not be considered on motion to dismiss because it "does

not evidence an agreement between the parties"); *cf. Argo Contracting Corp. v. Paint City Contractors, Inc.,* No. 00 Civ. 3207, 2000 WL 1528215, at *2 (S.D.N.Y. Oct.16, 2000) ("When a plaintiff alleges a written agreement, but does not possess that agreement, courts generally allow discovery to take place."); *Granite Partners, L.P. v. Bear, Stearns & Co.,* 58 F.Supp.2d 228, 251–52 (S.D.N.Y.1999) (denying motion to dismiss to allow discovery of "a signed, enforceable copy of the . . . letter may . . . be found within the defendants' possession").

F.2d 40, 42 (2d Cir.1988) (stating that "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial"). Also, when a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record. In contrast, on summary judgment the court is required to consider all relevant, admissible evidence submitted by the parties and contained in "pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits...." Fed.R.Civ.P. 56(c).

We also note that the District Court failed to consider plaintiffs' beneficial ownership claim under the Copyright Act in light of our holding in *Cortner v. Israel*, 732 F.2d 267, 270–71 (2d Cir.1984), and their assertion of a right to licensing fees arising out of the public performance of their digital recordings, both set forth in Count VII of the Amended Complaint. This may have been due in part to an ambiguity in the pleading. Count VII is titled "Infringement Pursuant to 17 U.S.C. [§] 501(b)," but it does not clearly allege copyright infringement and also includes an allegation of entitlement to licensing fees pursuant to 17 U.S.C. § 114. Am. Compl. ¶¶ 97–100. We leave to the sound discretion of the District Court whether to consider this claim as presented in the Amended Complaint or whether to allow plaintiffs leave to replead.

## II.

The District Court also dismissed plaintiffs' federal trademark claim brought pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which arises out of MP3.com's alleged use of plaintiffs' names and likenesses on its Internet website.

Section 43(a) prohibits any misrepresentation likely to cause confusion about the source of a product or service, in particular the use by any person of

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin ... likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association ... with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person....

15 U.S.C. § 1125(a)(1) (2000). Section 43(a) is a broad federal unfair competition provision which protects unregistered trademarks similar to the way that section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), protects registered marks. *See Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209–10, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Its purpose is to prevent consumer confusion regarding a product's source or sponsorship. *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61, 67 (2d Cir.2000) (citation omitted). Where there is a claim of consumer confusion with regard to the association of a product or service with another person's trademark, the central inquiry is whether it is likely that " 'an appreciable number of ordinarily prudent purchasers' " will be misled as to the source or sponsorship of the product or service in question. *Id.* at 61–62 (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978)).

Here, plaintiffs allege that MP3.com uses their names and likenesses without their consent in connection with the services it offers on its Internet web-

site, particularly those that allow consumers to download music to their computers (the "Beam It" feature) or listen to streamed music over the Internet (the "Instant Listening" feature). Plaintiffs claim that this "deceptive affiliation" is likely to cause confusion by linking their names or likenesses with MP3.com or the files delivered on its website.

In finding that plaintiffs failed to state a claim, the District Court relied exclusively on an example of the allegedly deceptive conduct set forth in the Amended Complaint, which provides:

> For example, when the [sic] any of the plaintiffs' names are typed into the search engine on MP3.com's website, a box appears with the following language: "Want to hear [artist's name] on-line? Try My.MP3.com, where you can beam your CDs and listen to them anytime, anywhere."

Am. Compl. ¶ 66. Applying the standard for non-trademark or "nominative" fair use set forth by the Ninth Circuit in *New Kids on the Block v. News America Publishing, Inc.,* 971 F.2d 302 (9th Cir.1992), the District Court determined that MP3.com's use of plaintiffs' names in this example was non-infringing. *Chambers,* 123 F.Supp.2d at 202. While this example may constitute a fair use, the Amended Complaint's allegations extend beyond this one instance of allegedly infringing conduct. Read in the light most favorable to plaintiffs, their Lanham Act claim is broader than the example and encompasses the use of plaintiffs' names *and* likenesses, as well as MP3 format files other than those involving plaintiffs' works. Am. Compl. ¶¶ 34, 69. Because it is not "beyond doubt" that plaintiffs "can prove no set of facts which would entitle [them] to relief," *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000), the District Court erred by dismissing the claim on the basis of the listed example

without considering the other conduct raised by plaintiffs' allegations. On remand, we leave to the discretion of the District Court whether to allow plaintiffs leave to replead in order to clarify the scope of their allegations.

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.

