**Robert NOVAK D/B/A Pets Warehouse and Petswarehouse.com, Plaintiff,**

v.

**OVERTURE SERVICES, INC., Google, Inc., Innovative Marketing Solutions, Inc. d/b/a Kanoodle.com, John Holdefehr d/b/a Judge–for–Yourself.com, Biochemics, Inc. d/b/a Doctordog.com, Defendants.**

**No. CV 02–5164(DRH)(WDW).**

United States District Court, E.D. New York.

March 25, 2004.

Robert Novak, Copiague, NY, Plaintiff Pro se.

Hodgson Russ LLP by Aidan M. McCormack, Esq., New York City, for Defendant Innovative Marketing Solutions.

Wilson, Sonsini, Goodrich & Rosati by David H. Kramer, Esq., Palo Alto, CA, for Defendant Google, Inc.

Brinks Hofer Gilson & Lione by Phillip A. Jones, Esq., Eric W. Gallagher, Esq., David S. Fleming, Esq., Chicago, IL, for Defendant Overture Services, Inc.

Morrison Mahoney & Miller LLP by Matthew B. Anderson, Esq., New York City, for Defendant Biochemics, Inc., d/b/a Doctordog.com.

John Holdefehr, Oakland, NJ, Defendant Pro se.

## MEMORANDUM & ORDER

HURLEY, District Judge.

Plaintiff has initiated this action to address various perceived torts, including trademark infringement, arising from the use of an aspect of certain internet search engines. One defendant has filed a motion dismiss the first count of the complaint for improper venue or, in the alternative, for failure to state claim. Another defendant has filed a motion to dismiss all counts in the complaint for lack of personal jurisdiction or, in the alternative, to dismiss all trademark claims for failure to state a claim. A third defendant has filed a motion to dismiss all counts in the complaint due to the purported absence of personal jurisdiction. For the following reasons, the Court grants the first defendant's motion to dismiss the claims in the first count for improper venue and failure to state a claim. The two motions to dismiss for lack of personal jurisdiction are denied. The motion to dismiss the trademark claims as a matter of law is also denied.

## I. BACKGROUND.

Plaintiff, who is proceeding pro se, has initiated several actions in this Court under various trademark infringement theories. Plaintiff initiated this action on September 24, 2002, by filing a complaint. There are twelve counts in the complaint. The Court will discuss these counts in order.

The first count alleges that Defendant Google, Inc. ("Google") "breach[ed a] [c]ontract" and "[t]ortious[ly] interefere[d] with contractual relations and prospective business relations." Complaint ¶ 23. According to this count, liability rises from the refusal by "Google [to] remove any material [from its online discussion groups] deemed objectionable by Plaintiff." *Id.* ¶ 28. Plaintiff further alleges that by failing to comply with the terms of service provided for these discussion groups, which purportedly require them to remove all material that Plaintiff finds objectionable, Google tortiously interfered with Plaintiff's contractual relations and prospective business relations. *Id.* ¶ 27. The first count does not mention trademarks in any colorable manner. *See id.* ¶¶ 23–28.

The second through twelfth counts all stem from the same core allegations regarding certain aspects of navigating the internet through the use of the world wide web ("Web"). "Navigating the Web is relatively straightforward. A user may either type the address of a known page or enter one or more keywords into a commercial 'search engine' in an effort to locate sites on a subject of interest." *Reno v. American Civil Liberties Union*, 521 U.S. 844, 853, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). Plaintiff's allegations all stem from the use of these search engines. To explain these allegation, some background discussion is necessary.

In very basic terms, the Web is made up of myriad individual websites, each of which has a corresponding Uniform Resource Locator ("URL" or "URLs"). The Second Circuit has defined URLs as:

> Sequences of letters that identify resources in the web, such as documents, images, downloadable files, services, and electronic mailboxes. The URL is the address of the resource, and contains the protocol of the resource (e.g., "http://" or "ftp://"), the domain names for the resource, and additional information that identifies the location of the file on the computer that hosts the website.

*Register.Com, Inc. v. Verio, Inc.*, 356 F.3d 393, 407 n. 4 (2d Cir.2004).

Due to the enormous number of websites and correspondingly large number of unique URLs, the Web is notoriously difficult to navigate. It is possible to go directly to websites via an input of the specific URL. However, such a process

presupposes that the user knows the exact website that she seeks. This is often not the case. In such circumstances, the user may wish to utilize an internet search engine.

To utilize an internet search engine, a user must enter a text inquiry into the program. (The data input for the internet search engine is often found on the website of the company, i.e. "Yahoo.com.") Generally, search engines attempt to match the intent of the user's text query with the actual content of the web pages found on the net. Thus, for example, when a user inputted the term "strawberry fields" into a search engine, that same engine would search the internet to provide a ranked list of all web pages whose content relates to that phrase. Ideally, the website placed first on the outputted list would relate directly to the user's intended target. However, among other complicating factors, the user's intent is rarely crystalline. Thus, the search process is imperfect. For this reason, returning to the term that the Court utilized before, a search engine analyzing the term "strawberry fields" may produce a list headed by links to a Beatles music fan site entitled "StrawberryFields.com." If, however, the user was searching for a website devoted to fresh produce, she will be disappointed by this outcome. With this background in mind, the Court turns to the complaint.

Defendants Google, Overture Services, Inc. ("Overture") and Innovative Marketing Solutions, Inc. d/b/a Kanoodle.com ("Kanoodle") all own and operate search engines on the Web. The pro se complaint is not a model of clarity. Nonetheless, interpreting the language of the complaint broadly, Plaintiff alleges that Defendants Google, Overture and Kanoodle were manipulating the outcomes of certain searches when paid to do so. Specifically, Plaintiff alleges that these defendants would sell the words "Pet" and "Ware-

house" to certain other defendants. According to Plaintiff, the effect of this monetary arrangement was that when a user inputted those words, the defendants' websites would be at the top of the list instead of Plaintiff's website. This situation was further complicated by the fact that Plaintiff claims to own the trademark for the phrase "PETS WAREHOUSE." As a result of these facts, Plaintiff alleges that Google, Overture and Kanoodle are "directly, contributorily, and vicariously liable for the resulting acts of unfair competition, trademark infringement, trademark dilution misappropriation, deceptive trade practices, unjust enrichment and tortious interference with prospective economic advantage." *Id.* ¶ 37.

The instant motions were fully briefed and submitted to the Court on March 27, 2003. Included among these motions are Google's motion to dismiss the first count for either improper venue or failure to state a claim, the motion by Defendant Biochemics, Inc., d/b/a Doctordog.com ("Biochemics") to dismiss for lack of personal jurisdiction, the motion by Biochemics for failure to state a claim and the motion by Defendant John Holdefehr d/b/a Judge–for–Yourself.com ("Holdefehr") to dismiss for lack of personal jurisdiction. On May 21, 2003, the Court received Plaintiff's request for a stay of this action due to a pending bankruptcy petition. That request was later denied.

## II. DISCUSSION.

### A. Google's Motion.

Google first files a motion to dismiss all claims rising from an alleged breach of the terms and conditions agreement associated with the discussion groups accessible through its website. The basis for this motion is that the terms and conditions of use contract clearly states that all federal actions "arising" from the use of

the discussion groups must be venued in the Northern District of California. Therefore, according to Google, this claim must be dismissed for lack of venue.

Plaintiff has submitted a confusing response to this motion. In a December 10, 2002, letter, Plaintiff maintained, contrary to the plain language of the complaint, *see* complaint ¶ 27, that the complaint was not intended to articulate any claims for breach of the terms and conditions of use for the discussion groups. *See* December 10, 2002, letter. Plaintiff has now changed his tune. He now maintains that the claim "relates to this Defendant [Google] failing to abide by [its] own terms of service." Plaintiff's Google Opp. Mem. at 1.[1] The Court will hold Plaintiff to this interpretation of his claim. Since the terms of the forum selection clause embrace all claims "relating to [the] use of th[e] Service," the Court concludes that Plaintiff's first claim falls under the clause.

Plaintiff maintains that he is not bound by the forum selection clause. *See* Plaintiff's Google Opp. Mem. at 3–6. Plaintiff's arguments on this point are unclear. *See id.* However, because he is proceeding pro se, the Court will assume that Plaintiff means to state that, although he is a party to the contract embodied by the Google terms of service as a whole, the forum selection portion of that contract is unenforceable for some reason.

■ Forum selection clauses, such as the one at issue in the instant case, are regularly enforced. *See Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Weiss v. Columbia Pictures Television, Inc.,* 801 F.Supp. 1276, 1282 (S.D.N.Y.1992). "A forum selection clause is enforceable unless it is shown that to enforce it would be 'unreasonable and unjust' or that some invalidity such as fraud or overreaching is attached to it." *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir.1997); *see also Red Bull Assocs. v. Best W. Int'l, Inc.,* 862 F.2d 963 (2d Cir.1988); *Bense v. Interstate Battery Sys. of Am., Inc.,* 683 F.2d 718, 721–22 (2d Cir.1982). The Court now considers Plaintiff's arguments as to the unenforceability of the relevant forum selection clause.

Plaintiff articulates three reasons why the forum selection clause at issue in this case is unreasonable. First Plaintiff argues that there was an inadequate opportunity to read the clause. The Court disagrees. Prior to registration for access to the Google discussion groups, Plaintiff must accept the "Terms and Conditions of Use for Google Groups." *See* Plaintiff's Ex. K. On this page is a window for viewing the "terms and conditions" contract and a button to indicate acceptance of the terms contained therein. This window allows for the viewing of ten lines at a time. The relevant portion of the contract occurs more than three hundred lines into the document. Plaintiff claims that, because so little of the contract was viewable at a time, the forum selection clause must be unenforceable. The Court disagrees. Plaintiff had a full and fair opportunity to read the entire document, which is only seven and a half pages long and is written in an easy to read font. Moreover, no time limitation limited Plaintiff's opportunity to scroll through the terms and conditions. Nothing about these circumstances renders the clause unenforceable.

Next, Plaintiff argues that, since their was no option to negotiate the terms of the contract, it must be unenforceable. The Court disagrees. Plaintiff had a full and

---

1. Although briefed contemporaneously, Plaintiff has filed a separate opposition memorandum to each of the motions mentioned herein. Therefore, the Court identifies the specific defendant corresponding to each memorandum.

fair opportunity to refuse the terms of this contract. There is also no indication that Plaintiff was under any external pressure to accept these terms. An "agreement cannot be considered procedurally unconscionable, or a contract of adhesion, simply because it is a form contract." *Rosenfeld v. Port Authority of New York and New Jersey,* 108 F.Supp.2d 156, 164 (E.D.N.Y. 2000). Thus, the lack of a dialogue between Plaintiff and Google does not mean that this forum selection clause was unenforceable.

Finally, Plaintiff argues that the terms of the clause itself are unenforceable and unconscionable. This argument is also unpersuasive. The relevant portion of the contract states:

> By using this service, you agree that the exclusive forum for the bringing of any claims or causes of action arising out of or relating to your use of this service is the United States District Court for the Northern District of California, or if such court lacks subject matter jurisdiction, the state courts of California encompassed within the geographic scope of the Northern District of California.

*See* Plaintiff's Ex. L at 7.

This language is not, on its face, unconscionable. Therefore, Plaintiff's argument is unpersuasive.

■ In light of the foregoing discussion, the Court can find neither overreaching, fraud or unconscionability in the forum selection clause. The Court is aware that the ultimate decision of whether to dismiss due to improper venue "is left to the sound discretion of the district court." *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir. 1989) (citations omitted). However, the Court chooses to exercise its discretion to dismiss this first claim without prejudice to renew in an appropriate jurisdiction. However, a second claim remains within the first count.

■ Plaintiff also alleges that Google "[t]ortious[ly] interefere[d] with contractual relations," complaint ¶ 23, by refusing to "remove any material [from its online discussion groups] deemed objectionable by Plaintiff." *Id.* ¶ 28. Google maintains that this claim is barred by federal immunity. *See* 47 U.S.C. § 230(c). Plaintiff disagrees.

As an initial matter, the Court notes that invocation of Section 230(c) immunity constitutes an affirmative defense. As the parties are not required to plead around affirmative defenses, such an affirmative defense is generally not fodder for a Rule 12(b)(6) motion. *See Doe v. GTE Corp.,* 347 F.3d 655, 657 (7th Cir.2003) (Easterbrook, J.). Instead, such a defense is generally addressed as Rule 12(c) or Rule 56 motion. *See id.* However, Plaintiff does not request further notice or discovery to prepare for an opposition to this affirmative defense. Therefore, the Court addresses the motion on its merits "without fussing over procedural niceties to which the parties are indifferent." *Id.*

Section 230(c)(1) states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Under Section 230(c), an "interactive computer service" qualifies for immunity so long as it does not also function as an "information content provider" for the portion of the statement or publication at issue. *See Carafano v. Metrosplash.Com. Inc.,* 339 F.3d 1119, 1123 (9th Cir.2003). No interpretation of the complaint, even when applying the generous interpretations appropriate in connection with Plaintiff's pro se status, could suggest that Google was the "information content provider" for the relevant statements. Instead, the complaint clearly states that the claim rises from the failure to "immediately" remove statements from

the discussion groups that Plaintiff found "objectionable." *See* complaint ¶¶ 24–28. Therefore, on the face of the complaint, the immunity provided by Section 230(c) applies to this second claim found in the first count of the complaint. However, Plaintiff asks this Court to disregard the plain meaning of the complaint.

Plaintiff argues that, contrary to all of the language contained therein, the first count actually sounds in trademark. *See* Plaintiff's Google Opp. Mem. at 8–10. Therefore, according to Plaintiff, the immunity provided by Section 230(c) should not attach. *See id.; see also Gucci America, Inc. v. Hall & Associates,* 135 F.Supp.2d 409, 412–416 (S.D.N.Y.2001). The Court does not agree. On the face of the complaint, the only reasonable interpretation is that Plaintiff seeks liability for third-party communications that purportedly, due to their objectionable nature, tortiously interfered with prospective economic opportunities. The complaint makes no mention of trademarks, trade names or infringement. Therefore, the Court declines to apply Plaintiff's interpretation of the claim.

In reaching this conclusion the Court is aware of the solicitude that is generally extended toward pro se litigants. However, Plaintiff's new and novel re-interpretation of the first count is tantamount to an ad hoc amendment of the complaint. The Court's solicitude does not extend that far. If Plaintiff wishes to substantively amend his claims, he must do so in accordance with the federal rules of civil procedure and the Court's individual practice rules. *See* Fed.R.Civ.P. 15(a).

For all of these reasons, the Court concludes that Plaintiff has failed to state a claim in the first count of the complaint. *See* complaint ¶¶ 23–28. Moreover, as discussed more fully *supra,* any claims based upon the performance of the terms and conditions contract are dismissed due to

improper venue. As such, Google's motion to dismiss is granted as to the claims found in that first count.

### B.  Personal Jurisdiction Motions.

■ Defendants Biochemics, Inc., d/b/a Doctordog.com ("Biochemics") and John Holdefehr ("Holdefehr") have filed separate motions to dismiss for lack of personal jurisdiction. "On a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, [the] plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *In re Magnetic Audiotape Antitrust Litigation,* 334 F.3d 204, 206 (2d Cir.2003). However, the Court has "considerable procedural leeway" in deciding 12(b)(2) motions, and may accept affidavits if it so chooses. *See Marine Midland Bank v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). In fact, where the allegations in the complaint are insufficient, affidavits must be provided. *See Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184 (2d Cir.1998). Prior to reaching the individual merits of these individual motions, however, the Court will review the applicable law.

It is undisputed that neither Holdefehr nor Biochemics are domiciliaries of New York state, the venue of the instant action. Thus, the Court first addresses the relevant state "long-arm" statute. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 124 (2d Cir.2002). In the instant case, the parties do not dispute that the New York state long-arm statute applies.

New York's long-arm statute provides that New York courts may assert personal jurisdiction over a non-domiciliary defendant:

[a]s to a cause arising from any of the acts enumerated in this section ..., who in person or through an agent ....

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

   (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

   (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a). Plaintiff relies upon Sections 302(a)(1) and 302(a)(3) of the New York Long-arm Statute.

■ Section 302(a)(1) confers jurisdiction over a defendant who "purposefully avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws," where the cause of action arises out of the subject matter of the business transacted. *Citigroup Inc. v. City Holding Company,* 97 F.Supp.2d 549, 564 (S.D.N.Y.2000). Stated differently, Section 302(a)(1) "is a 'single act statute' and 'proof of one transaction in New York is sufficient to invoke jurisdiction, even [if] the [defendant] never enters the state, so long as the [defendant's] activities [in New York] were purposeful and there is a substantial relation-

ship between the transaction and the claim asserted.'" *Roberts–Gordon, LLC v. Superior Radiant Products, Ltd.,* 85 F.Supp.2d 202, 212–13 (W.D.N.Y.2000) (quoting *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988)).

New York courts look to the totality of the circumstances to determine whether the defendant has engaged in some purposeful activity in New York in connection with the matter in controversy. *See Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 457 n. 5, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). Demonstrating that a defendant "transacted business" in New York and is suable on a cause of action arising from that transaction requires considerably less contact with New York than is necessary to establish that a defendant is doing business. If, under the totality of the circumstances, a defendant purposefully availed itself of the privilege of conducting business in New York, thereby invoking the benefits and protections of its laws, the defendant "transacts business" within the meaning of Section 302(a)(1). *See Broadcasting Rights International Corp. v. Societe du Tour de France, S.A.R.L.,* 675 F.Supp. 1439, 1443 (S.D.N.Y.1987) (citations omitted). The remaining question, therefore, is whether that transaction, or transactions, possess a "nexus" with or bear a "substantial relationship" to the cause of action. *See Roberts–Gordon.,* 85 F.Supp.2d at 213. If such a substantial relationship exists, the Court may properly exercise personal jurisdiction over that individual.

Since Defendants all maintain websites, it is also useful to discuss how those websites might trigger Section 302(a)(1). The classic discussion regarding the proper analysis of websites was provided by Judge Sweet in the *Citigroup* case.

[T]he courts have identified a spectrum of cases involving a defendant's use of the internet. At one end are cases where the defendant makes information available on what is essentially a "passive" website. This use of the internet has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant. At the other end of the spectrum are cases in which the defendant clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states. Finally, occupying the middle ground are cases in which the defendant maintains an interactive website which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction. *Citigroup*, 97 F.Supp.2d at 565 (citations omitted). The Court evaluates the interactivity of these websites to determine the significance and commercial nature of the identified interactive elements. *Id.* As such, a website that displays significant and commercial interactive design elements would trigger Section 302(a)(1). *See id.* Conversely a website that does not demonstrate such interactive characteristics will not trigger Section 302(a)(1).

Section 302(a)(3) provides for jurisdiction over a nondomiciliary who "commits a tortious act without the state causing injury to person or property within the state ... if [s]he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" N.Y.C.P.L.R. § 302(a)(3). Under § 302(a)(3)(i), a plaintiff must establish that the defendant regularly transacts business or "derives substantial revenue from goods used or consumed or services rendered, in the state." N.Y.C.P.L.R. § 302(a)(3)(i). "[I]n order to sustain jurisdiction under section 302(a)(3)(i), plaintiffs must demonstrate more than substantial revenue from sales to a New York entity, they must make some showing that the associated goods are 'used or consumed' in New York." *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 200 (2d Cir. 1990). The year the complaint was filed, 2002, provides the proper context for these questions. *See id.* at 199–200. For this reason, Plaintiff possesses the burden to demonstrate that relevant and sufficient contacts existed during 2002.

1. Biochemics.

■ The facts presented to the Court in the context of the instant motion establish that Section 302(a)(1) confers long-arm jurisdiction over Biochemics. It is undisputed that the relevant division of Biochemics, doctordog.com, has a website through which a product catalogue may be perused and products may be ordered. *See* Biochemics Ex. B. ¶¶ 28–29. It is equally undisputed that Biochemics derived more than six thousand dollars per year from business done through that website with New York state residents. All of these facts evidence the high degree of interactivity involved with this website. The Court concludes that this website is so interactive that the exercise of jurisdiction pursuant to Section 302(a)(1) is appropriate. *See Thomas Pub. Co. v. Industrial Quick Search, Inc.*, 237 F.Supp.2d 489, 492 (S.D.N.Y.2002). Therefore, without reaching the alternative grounds advanced by Plaintiff for the exercise of long-arm jurisdiction, the Court concludes that Section 302(a)(1) applies to the instant circumstances.

■ The Court must now consider whether the exercise of long-arm jurisdiction in these circumstances somehow violates Biochemics' constitutional due process rights. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000). The required due process analysis involves an inquiry into (1) whether a defendant has "minimum contacts" with the forum state and (2) whether the assertion of personal jurisdiction in these circumstances is consistent with "traditional notions of fair play and substantial justice . . . ." *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1027 (2d Cir.1997) (internal quotations omitted). As discussed *supra*, Biochemics' contacts with New York state are substantial and sustained. After all, during the previous two years, doctordog.com has consummated more than six thousand dollars worth of business with New York state residents alone. With that said, once a plaintiff has made a "threshold showing" of minimum contacts, the defendant must proffer "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Wiwa*, 226 F.3d at 99 (quotation omitted). Upon review of the submitted affidavits and memoranda, Biochemics has failed to make such a showing in the instant case. Therefore, the Court concludes that the exercise of long-arm jurisdiction under these circumstances would clearly comport with the principles of due process.

2. John Holdefehr.

■ The Holdefehr situation is very different. Holdefehr, a resident of New Jersey, operates a website entitled "Judge–for–Yourself.com." The Website sells no goods, solicits no offers for business, lists no phone numbers and sells no advertising. *See* Holdefehr Motion at 1. Plaintiff argues that this website is interactive because it provides links to other sites that sell goods, such as Amazon.com. The Court finds this argument unpersuasive. The facts that have been presented in connection with the instant motion unequivocally demonstrate that the Holdefehr website itself is passive in nature. The functions of other unrelated websites does not convince the Court otherwise. Therefore, the website itself does not provide grounds for personal jurisdiction in the instant case.

■ The Court therefore returns to the general provisions of Section 302(a)(1). Under this section, " 'proof of one transaction in New York is sufficient to invoke jurisdiction, even [if] the [defendant] never enters the state, so long as the [defendant's] activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted.' " *Roberts–Gordon*, 85 F.Supp.2d at 212–213 (quoting *Kreutter*, 71 N.Y.2d at 467, 527 N.Y.S.2d 195, 522 N.E.2d 40). In the instant case, it is alleged in the complaint that Holdefehr contracted with Kanoodle regarding certain key words. *See* Holdefehr Motion at 2. It is undisputed this contractual relationship generated more than $17,000 in 2002. *See id.* It is equally undisputed that Kanoodle is a New York corporation. Finally, the complaint bases its claims against Holdefehr, at least in part, upon this specific contractual relationship. *See* complaint ¶ 20. Upon these facts, it is clear that a transaction with a resident of New York gave rise to the specific claims alleged in the complaint. Therefore, Section 302(a)(1) applies to the instant circumstances. In reaching this conclusion, the Court does not reach the alternative grounds for the exercise of personal jurisdiction that are advanced by Plaintiff.

■ The Court now considers(1) whether the defendant has "minimum contacts" with the forum state and (2) whether the assertion of personal jurisdiction in these circumstances is consistent with

"traditional notions of fair play and substantial justice . . . ." *Chaiken,* 119 F.3d at 1027 (2d Cir.1997) (internal quotations omitted). As discussed *supra,* Holdefehr admittedly conducted $17,000 worth of business in New York state in 2002. That information constitutes at least a "threshold showing" of minimum contacts. *Wiwa,* 226 F.3d at 99. In response, Holdefehr has failed to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* For this reason, the Court concludes that the exercise of long-arm jurisdiction under the circumstances set forth in the instant motion would be consistent with the governing the principles of due process. As such, the exercise of personal jurisdiction is appropriate.

### C. Motion to Dismiss the Trademark Claims as a Matter of Law.

■ "To establish a trademark infringement claim under the Lanham Act, a plaintiff must show that the defendant used in commerce, without the plaintiff's consent, a 'reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion . . . .' " *Arrow Fastener Co., Inc. v. Stanley Works,* 59 F.3d 384, 390 (2d Cir.1995) (quoting 15 U.S.C. § 1114(1)(a)). To make such a showing, the plaintiff must show that he "has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." *Gruner + Jahr USA Publishing v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir.1993). The validity of a mark, to a certain extent depends upon its position along the so-called spectrum of distinctiveness.

■ "There are four categories along the spectrum of possible trademarks: generic, descriptive, suggestive, and arbitrary or fanciful." *Time, Inc. v. Petersen Pub. Co. L.L.C.,* 173 F.3d 113, 118 (2d Cir.1999). In the context of the instant motion, the Court focuses upon the distinction between a generic and a descriptive mark. The significance of this distinction is that while generic marks receive trademark protection under no circumstances, descriptive marks are protectable if they have acquired a secondary meaning. *See id.; CES Pub. Corp. v. St. Regis Publications, Inc.,* 531 F.2d 11, 13 (2d Cir.1975). Biochemics relies upon this distinction to argue that, as a matter of law, the "PETS WAREHOUSE" mark is generic and, therefore, undeserving of trademark protection.

■ Generic marks merely "describe the article or substance represented." *Bernard v. Commerce Drug Co., Inc.,* 774 F.Supp. 103, 106 (E.D.N.Y.1991). In other words, generic marks refer merely to the "genus of which the particular product is a species." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). While these statements are easily recited, the difficult portion of the analysis comes when divining the distinction between descriptive and generic marks. As one commentator has stated, the line between the two is "fuzzy and undefinable." McCarthy on Trademarks and Unfair Competition, § 12:20 (4th ed.). To aid in this difficult analysis, the courts in the Second Circuit have articulated a set of non-exclusive factors. These factors include: (1) generic use of the term by competitors which plaintiff has not challenged or generic use by plaintiff himself; (2) dictionary definitions, which may be relevant while not dispositive; (3) generic usage in trade journals or newspapers; (4) testimony of persons in the trade; and (5) consumer surveys. *Brandwynne v. Combe International, Ltd.,* 74 F.Supp.2d 364, 381

(S.D.N.Y.1999). However, because they require the evaluation of evidence beyond the pleadings, these factors are not helpful in the context of the instant Rule 12(b)(6) motion. *See Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) ("The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof"). Moreover, even if it were proper to consider such evidence in the context of the instant motion, Biochemics has failed to proffer any such evidence.

■ Simply put, then, the question is whether it is clear as a matter of law at this stage of the litigation that the term "PETS WAREHOUSE" is generic. In support of its argument that the mark is indeed generic, Biochemics has proffered an administrative panel decision rendered by the World Intellectual Property Organization ("WIPO"). *See* Biochemics' Ex. C. In this decision, WIPO, which is an international non-governmental entity that is partially devoted to the administration of intellectual property rights on the internet, decided that the service mark "pet warehouse" was too generic to merit trademark protection. *See id.* However, the written arbitration decision fails to persuade the Court that, at this stage of the litigation, and with no discovery, the mark may be deemed generic.

First, the Court notes that this international arbitration decision, while apparently drawing from aspects of the United States trademark law, was rendered by neither a federal or state court, carries no precedential weight. Second, it is unclear upon the exhibits proffered to the Court whether the arbitration decision is bound by United States trademark law. Third, to the extent that the arbitration decision did rely upon decisions by United States federal courts, these decisions were not made as a matter of law. To the contrary,

both of the decisions cited in the arbitration decision, as well as the arbitration decision itself, relied upon outside evidence indicating the nature of the mark's use by the parties and in the industry as a whole. *See Mil–Mar Shoe Co., Inc. v. Shonac Corp.,* 75 F.3d 1153, 1160 (7th Cir.1996) (appeal from an order granting a preliminary injunction); *Warehouse Foods, Inc. v. The Great Atlantic and Pacific Tea Company, Inc.,* 1984 WL 63624, 223 U.S.P.Q. 892 (N.D.Fla.1984) (grant of summary judgment). Finally, the Court notes that, unlike the plaintiffs in all of the cases cited above, Plaintiff has actually obtained a trademark registration from the United States Patent and Trademark Office ("USPTO"). *See* complaint ¶ 13. "Registration under the Lanham Act is .... pertinent to a mark's strength." *Time, Inc.,* 173 F.3d at 118. As such, registration provides some indication that the mark is descriptive rather than generic.

For all of these reasons, the Court denies the motion to determine that the mark "PETS WAREHOUSE" is generic as a matter of law. This decision does not mean that the Court will not entertain arguments at the summary judgment stage on this issue. However, for the limited and narrow purposes of the instant Rule 12(b)(6) motion, the Court cannot conclude as a matter of law that the registered mark is generic.

## III. CONCLUSIONS.

For the foregoing reasons, the Court GRANTS Google's motion to dismiss the claims contained in the first count of the complaint. The motion by Biochemics to dismiss the complaint for lack of personal jurisdiction is DENIED. The motion by Holdefehr to dismiss the complain due to the absence of personal jurisdiction is also DENIED. Likewise, the motion to dismiss all trademark claims as a matter of

law is DENIED. Also, the Court notes that Plaintiff has incorrectly titled his *opposition* to certain of these motions as a "cross-motion." These "cross-motions" are also DENIED.

SO ORDERED.