Kyle **WILSON**, Plaintiff,

v.

**KELLOGG COMPANY**, Defendant.

**No. CV 14–2817.**

United States District Court, E.D. New York.

Signed June 25, 2015.

---

Kenneth B. Mock, Esq., by Kenneth B. Mock, Esq., Uniondale, NY, for Plaintiff.

Farrell Fritz, P.C., by James M. Wicks, Esq., Uniondale, NY, for Defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge:

Before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion. For the following reasons, Defendant's motion is granted and this action is dismissed in its entirety.

## BACKGROUND

On or about December 28, 2008, the Plaintiff, Kyle Wilson ("Wilson" or "Plaintiff"), submitted an idea for a cereal breakfast drink product through a "Gr-r-reat Ideas!" web portal maintained by the Defendant, Kellogg Company ("Kellogg" or "Defendant"), which solicited consumers to "Team up with Kellogg" by submitting their "Big Ideas" or their "Great Innovations." (2d Am. Compl. ¶¶ 5–6 and Ex. A, annexed thereto.) Plaintiff submitted his proposal through the "Great Innovations" portion of the website. (2d Am. Compl. Ex. C.) Prior to submitting his idea, Plaintiff was required to agree to the Terms and

Conditions listed on the web portal, which Plaintiff did. (2d Am. Compl. ¶ 11.)

The idea that Plaintiff submitted to Kellogg was for a "Flavored Cereal Milk Breakfast Drink To Go." (2d Am. Compl. ¶ 6.) Included with Plaintiff's idea proposal were numerous examples of the bottle's packaging, its slogan and a narrative of his conception. (2d Am. Compl. ¶ 6 and Ex. B, annexed thereto.) On or about January 25, 2009, Plaintiff received an email from Kellogg's Director of Open Marketing, Jim Melluish, who advised Plaintiff that Kellogg had reviewed the proposal he submitted through the web portal but that Kellogg was "not interested in this opportunity at this time." (2d Am. Compl. ¶ 7 and Ex. C, annexed thereto.)

In September 2012, Kellogg applied for trademark protection for "Kellogg's Breakfast To Go." (2d Am. Compl. ¶ 8.) The applications were made under separate categories of Goods and Services including "Chocolate-based beverages with milk." (2d Am. Compl. ¶ 8.) On or about June 6, 2013, Kellogg launched it's "Breakfast To Go" product line and has since marketed, distributed and sold the beverage nationally under the Kellogg brand. (2d Am. Compl. ¶ 9.) Kellogg's "Breakfast To Go" product consists of a bowl of cereal and milk in a portable beverage format, which Plaintiff alleges bears a striking similarity to the idea he submitted through Kellogg's web portal that was rejected by Kellogg. (2d Am. Compl. ¶ 9.) Plaintiff further alleges that the description used by Kellogg regarding the product's content, as well as the bottling and the "Breakfast ... To Go" slogan are also substantially similar to Plaintiff's conception. (2d Am. Compl. ¶ 9.)

On January 15, 2014, Plaintiff sent a letter to Kellogg outlining his claim that Kellogg had stolen his idea for the "Breakfast To Go" product line. (2d Am. Compl. ¶ 10.) In response, Kellogg denied that their product had any remote similarity to Plaintiff's submission and that by submitting an idea through the web portal, Plaintiff had acknowledged a grant of rights to Kellogg for the use of any ideas submitted. (2d Am. Compl. ¶ 10.)

Plaintiff commenced the within diversity action on May 3, 2014. Plaintiff amended his Complaint once as of right on May 20, 2014. On July 11, 2014, with the consent of Defendant, Plaintiff amended his Complaint a second time. Plaintiff's Second Amended Complaint contains two causes of action for breach of an implied contract and unjust enrichment. The parties agree that as per the Terms and Conditions of the "Gr-r-reat Ideas!" web portal, this action is governed by Michigan law. (2d Am. Compl. ¶ 13.)

## DISCUSSION

### I. *Legal Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). As a general rule, the court is required to accept as true all of the allegations contained in the complaint. *See Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937; *Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 237 (2d Cir.2007).

■ However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 678–79, 129 S.Ct. 1937 (citation omitted); *see also Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

## II. *Materials the Court May Consider on a Motion to Dismiss*

■ Kellogg bases its motion to dismiss on the Terms and Conditions that Plaintiff was required to agree to prior to submitting his idea through the "Gr-r-reat Ideas!" web portal. Kellogg attaches the Terms and Conditions that existed in 2008 in connection with the online portal to the Declaration of its in-house counsel, James K. Lewis, filed in connection with the instant motion. (Lewis Decl., Ex. 1.) Kellogg contends that the Terms and Conditions bar Plaintiff from bringing the within action.

In his Memorandum of Law in opposition to the Defendant's Motion to Dismiss, Plaintiff argues that the Court should not consider the Terms and Conditions because although Plaintiff's Second Amended Complaint makes vague references to the Terms and Conditions, this is not enough to incorporate them into the complaint by reference. (Pl. Mem. of Law 9.) In addition, Plaintiff asserts that the authenticity of the Terms and Conditions is "disputed,"

in that the Terms and Conditions submitted by Kellogg pertain to Kellogg's "Big Ideas" portion of the web portal, not the "Great Innovations" portion, through which Plaintiff submitted his proposal. (Pl. Mem. of Law 9–11.) According to Plaintiff, despite repeated requests, Kellogg has thus far failed to produce the Terms and Conditions relevant to the "Great Innovations" portion of the web portal. (Pl. Mem. of Law 1.)

■ "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002)). A document is considered "integral" to the complaint where the complaint "relies heavily upon its terms and effect." *Chambers,* 282 F.3d at 153 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) *(per curiam))*. "[M]ere notice or possession [of a document] is not enough." *Chambers,* 282 F.3d at 153 (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991)). Rather, a plaintiff must have "had knowledge" of the document and "reli[ed] on the terms and effects" of it in drafting his complaint in order for the Court to consider it on a motion to dismiss. *Chambers,* 282 F.3d at 153.

The Terms and Conditions submitted by Kellogg herein meets the foregoing standard. In connection with the submission of his idea through Kellogg's online portal, Plaintiff agreed to the Terms and Conditions listed on the website. Plaintiff does not deny that he agreed to the Terms and Conditions; in fact, he acknowledges agreeing to them in his Second Amended Complaint. Despite this, Plaintiff asserts

that the Court should not consider the Terms and Conditions because he only vaguely mentions them in his complaint, which, according to Plaintiff, is not enough to incorporate them by reference.

The Court disagrees. "Plaintiff['s] failure to include matters of which as [ ] pleader[ ] [he] had notice and which were integral to [his] claim—and that [he] apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on [a 12(b)(6) ] motion." *L–7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir.2011) (quoting *Cortec,* 949 F.2d at 44). Given Plaintiff's knowledge of the Terms and Conditions and his deliberate decision to avoid any substantive reference to them in his complaint, the Court deems the Terms and Conditions incorporated into the Second Amended Complaint by reference, particularly since it is "integral to [plaintiff's] ability to pursue" his cause of action. *Sira,* 380 F.3d at 67.

As to Plaintiff's claim that the Terms and Conditions submitted by Kellogg are irrelevant because they pertain to "Big Ideas" and not "Great Innovations," the Court notes that the document attached to the Declaration of James Lewis includes the Terms and Conditions for both the "Big Ideas" portion of the web portal and those for the "Great Innovations" portion. (Lewis Decl., Ex. 1.) Accordingly, the Court finds the Terms and Conditions relevant and will consider them.

Moreover, with respect to Plaintiff's dispute as to the authenticity of the Terms and Conditions provided by Kellogg, the Declaration of Kellogg's in-house counsel, Mr. Lewis, states, under penalty of perjury, that the Terms and Conditions submitted are a "true and correct copy of the 2008 Terms and Conditions associated with Kellogg's online portal through which consumers could submit ideas." (Lewis Decl.

¶ 3.) The Court credits Mr. Lewis's Declaration.

### III.  *Breach of an Implied Contract*

Plaintiff's first cause of action alleges that when Kellogg solicited and accepted Plaintiff's submission through its online portal, this constituted an implied agreement to compensate Plaintiff for the commercial use of his idea. (2d Am. Compl. ¶¶ 15–16.) According to Plaintiff, although Kellogg advised Plaintiff that it was not interested in his product idea at that time, it then went on to market and sell Plaintiff's concept without providing any compensation to Plaintiff, thereby breaching the alleged implied contract in place between the two parties. (2d Am. Compl. ¶¶ 17–19.)

Pursuant to Michigan law—which, as stated *supra,* controls in this case—"[a] contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction." *Sutton v. Cadillac Area Pub. Sch.,* 117 Mich.App. 38, 323 N.W.2d 582, 585 (1982) (quotation omitted). "However, a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp. v. City of Detroit,* 256 Mich. App. 463, 666 N.W.2d 271, 280 (2003) (citation omitted). Since there is an express contract here that covers the same subject matter—*i.e.,* the Terms and Conditions—Plaintiff's claim for breach of an implied contract fails as a matter of law.

"On the internet, the primary means of forming a contract are the so-called 'clickwrap' (or 'click-through') agreements, in which website users typically

click an 'I agree' box after being presented with a list of terms and conditions of use...." *Hines v. Overstock.com, Inc.*, 668 F.Supp.2d 362, 366 (E.D.N.Y.2009). Such agreements "require a user to affirmatively click a box on the website acknowledging awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website." *Berkson v. Gogo LLC*, No. 14–CV–1199, 97 F.Supp.3d 359, 397, 2015 WL 1600755, at *28, 2015 U.S. Dist. LEXIS 46899, at *69–70 (E.D.N.Y. Apr. 8, 2015) (citation omitted). "By requiring a physical manifestation of assent, a user is said to be put on inquiry notice of the terms assented to." *Id.* at 397, at *28, 2015 U.S. Dist. LEXIS 46899, at *70. For this reason, courts typically find such agreements to be enforceable. *Id.* at 397, at *28, 2015 U.S. Dist. LEXIS 46899 at *69–71 ("almost every lower court to consider the issue has found 'clickwrap' licenses, in which an online user click 'I agree' to standard form terms, enforceable") (citation omitted); *see also ViSalus, Inc. v. Smith*, No. 13–10631, 2013 WL 2156031, at *5 (E.D.Mich. May 17, 2013) (finding that "when Defendant registered online he agreed to the agreements at issue" and that Plaintiff's "acceptance of that registration information ... started Defendant's relationship with Plaintiff"); *Person v. Google Inc.*, 456 F.Supp.2d 488, 493 (S.D.N.Y.2006) (noting that prior to using defendant's website, "every customer must click on a box acknowledging that they agree to the terms and conditions of Defendant's contract" and that "Plaintiff's very existence as [Defendant's] customer is evidence that he agreed to the 2003 form contract proffered by Defendant.").

■ Here, Plaintiff acknowledges that he agreed to the Terms and Conditions prior to submitting his proposal to Kellogg. (2d Am. Compl.¶ 11.) Plaintiff also

had the option of refusing to accept Kellogg's Terms and Conditions, at which point he would not be able to continue with the submission process. (Lewis Decl., Ex. 1.) Whether Plaintiff's breakfast drink proposal was considered a "Big Idea" or a "Great Innovation"—a point on which the parties disagree—both sets of Terms and Conditions expressly state that Kellogg is under no obligation to compensate anyone for their submission. With respect to the "Big Ideas" portion of the website, the Terms and Conditions clearly state that "Kellogg will not pay you for the use of any Bid Idea submitted by you." (Lewis Decl., Ex. 1.)

Similarly, the Terms and Conditions for the "Great Innovations" portion of the website expressly state that "Kellogg is not obligated in any way to pay for a submitted innovation. If Kellogg Company does decide to use your innovation and it is not protected by a patent or copyright, Kellogg may, in its sole discretion, grant you an award, not to exceed $5,000." (*Id.*) This language in no way affirmatively obligates Kellogg to compensate anyone for the submission of a "Great Innovation." Rather, as the Terms and Conditions state, it was solely within Kellogg's discretion whether or not to award compensation.

■ As evidenced by the foregoing, Plaintiff entered into an express contract with Kellogg when he accepted the Terms and Conditions on Kellogg's online portal. Those terms and conditions make clear that Kellogg was in no way obligated to compensate Plaintiff for his breakfast drink proposal. Accordingly, because there is an express contract that already covers the same subject matter for which Plaintiff seeks to imply a contract, Plaintiff's claim for breach an in implied contract fails as a matter of law and is therefore dismissed.[1]

## IV. Unjust Enrichment

██ Plaintiff's second cause of action alleges that Kellogg has been unjustly enriched by the use of Plaintiff's breakfast drink proposal. (2d Am. Compl. ¶¶ 23–26.) According to Plaintiff, Kellogg's "discretionary Terms and Conditions regarding contract formation and compensation has allowed the Defendant to be unjustly enriched." (2d Am. Compl. ¶ 24.) Plaintiff further alleges that he has suffered an inequality as a result of not being compensated by Kellogg from the revenue generated by Kellogg's use of his idea. (2d Am. Compl. ¶ 25.)

██ Under Michigan law, unjust enrichment requires Plaintiff to demonstrate "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc. v. Morang–Kelly Investment, Inc.*, 302 Mich.App. 59, 836 N.W.2d 898, 901 (2013) (citation omitted). In such instances, "the law will imply a contract in order to prevent unjust enrichment."

*Hudson v. Mathers*, 283 Mich.App. 91, 770 N.W.2d 883, 887 (2009) (citation omitted). "However, a contract will be implied only if there is no express contract covering the same subject matter." *Bellevue Ventures*, 836 N.W.2d at 901.

As found above, the Terms and Conditions constitute an express contract between Plaintiff and Kellogg. As also set forth above, the Terms and Conditions clearly state that Kellogg is not required to compensate Plaintiff in any way for the use of his breakfast drink idea. Any such compensation is solely within the discretion of Kellogg. Since there is an express contract in place between Plaintiff and Kellogg governing the terms of compensation, "a contract may not be implied under a theory of unjust enrichment." *Hudson*, 770 N.W.2d at 887.

Accordingly, Plaintiff's claim for unjust enrichment is dismissed.

## V. Leave to Replead

██ Although not requested by Plaintiff, the Court notes the general rule that "the court should not dismiss without

---

1. Although not argued in his Memorandum of Law in Opposition to the within motion to dismiss, Plaintiff's Second Amended Complaint alleges that the Terms and Conditions are unconscionable. (2d Am. Compl. ¶ 12.) "The question of whether a contract provision is unconscionable is governed by state law." *Universal Grading Serv. v. eBay, Inc.*, No. 08–CV–3557, 2009 WL 2029796, at *17 (E.D.N.Y. June 10, 2009) (citation omitted). Under Michigan law, "[i]n order for a contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present." *Clark v. DaimlerChrysler Corp.*, 268 Mich.App. 138, 706 N.W.2d 471, 474 (2005) (citation omitted). A contract provision is procedurally unconscionable if "the weaker party had no realistic alternative to acceptance of the term." *Id.* at 474. "If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural uncon-

scionability." *Id.* Similarly, an agreement is not "considered procedurally unconscionable, or a contract of adhesion, simply because it is a form contract." *Universal Grading Serv.*, 2009 WL 2029796, at *18 (citing *Novak v. Overture Servs., Inc.*, 309 F.Supp.2d 446, 452 (E.D.N.Y.2004)). Here, Plaintiff had the option not to accept Kellogg's Terms and Conditions, and to not submit his idea through Kellogg's website. (Lewis Decl., Ex. 1.) "Thus, because [P]laintiff[ ] could have chosen not to register to use [Kellogg's] services, [P]laintiff[ ] had a meaningful alternative to accepting the [Terms and Conditions.]" *Universal Grading Serv.*, 2009 WL 2029796, at *18. Accordingly, the Terms and Conditions are not procedurally unconscionable. Moreover, because the Court finds no procedural unconscionability, it need not reach the issue of substantive unconscionability since both are required for a contract provision to be rendered unconscionable.

granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795–96 (2d Cir. 1999) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)). However, "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). Leave to amend is therefore denied as futile. *See id.* (citing *Hunt v. Alliance N. Am. Gov't Income Trust,* 159 F.3d 723, 728 (2d Cir.1998)); *see also Roth v. CitiMortgage Inc.,* 756 F.3d 178, 183 (2d Cir.2014) ("Leave ·to amend need not be granted where the proposed amendment would be futile.").

## *CONCLUSION*

For the foregoing reasons, Defendant's motion to dismiss is granted and Plaintiff's Second Amended Complaint is dismissed in its entirety, with prejudice. The Clerk of the Court is directed to enter judgment accordingly and to thereafter close this action.

**SO ORDERED.**