15-2238-cv
Austin v. Town of Farmington

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2015

(Argued: January 22, 2016          Decided: June 21, 2016)

Docket No. 15-2238-cv

- - - - - -   - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COLLEEN & JOHN AUSTIN,
          Plaintiffs-Appellants,

                    v.

TOWN OF FARMINGTON,
          Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:  WINTER, RAGGI, and DRONEY, Circuit Judges.

Appeal from a grant by the United States District Court for the Western District of New York (Michael A. Telesca, Judge) of a Rule 12(b)(6) motion dismissing appellants' complaint asserting Fair Housing Act claims.  The principal issue is whether the Town's resolutions granting variances allowing appellants to build auxiliary structures, e.g. an above-ground pool, fence, and deck, violated the Act by requiring removal when their disabled child left the property.  We affirm in part and vacate in part.

                              LAURIE MARIE LAMBRIX, Legal
                              Assistance of Western New York,
                              Inc., Rochester, NY, for
                              Plaintiffs-Appellants.

1

ROBERT BRENNA JR.(Sheldon W. Boyce, Jr. and Donald G. Rehkopf, Jr., on the brief), Brenna Boyce, PLLC, Rochester, NY, for Defendant-Appellee.

WINTER, Circuit Judge:

Colleen and John Austin appeal from Judge Telesca's dismissal of their complaint pursuant to Fed. R. Civ. P. 12(b)(6). The complaint asserted claims under the Fair Housing Act ("FHA"), Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. § 3601 et seq., against the Town of Farmington. The complaint alleged that appellants obtained limited variances from a land-use regulation prohibiting accessory structures on the lot of their newly purchased home.[1] The variances allowed appellants to install a fence, pool, and deck designed to accommodate the needs of appellants' disabled son.[2] The Town Board's resolutions allowing the variances required removal of the structures when, inter alia, the disabled child's residency in the house terminated. We shall refer to these limitations as the "Restoration Provisions." The

---

[1] Typical zoning variances always "run with the land" and continue until properly revoked. 2 Anderson, New York Zoning Law and Practice § 23.53 [3d ed]. However, while we use the term "variance" in this opinion to refer to the Town's resolutions, they were obviously not intended to run with the land. See J. App'x at 49 (stating that variance was "a temporary accommodation" of child's special needs).

[2] The FHA uses the term "handicap" rather than "disability." See 42 U.S.C. § 3604(f)(3). The FHA definition of "handicap," though, is virtually identical to the definition of "disability" in the Americans with Disabilities Act of 1990 ("ADA"), Pub. L. No. 101-336, 104 Stat. 327 (codified as amended at 42 U.S.C. § 12101 et seq. (2008)), and disability scholars tend to prefer the term "disability." We will therefore treat the two terms interchangeably and use the term "disability" throughout this opinion. See Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 38 n.8 (2d Cir. 2015) (using terms interchangeably for similar reasons).

2

reasonableness under the Act of the requirement that the land-use restrictions be restored after the child's residency ended is at the heart of the present dispute. Appellants also claim that the Restoration Provisions constituted illegal retaliation for their asserting FHA claims. See 42 U.S.C. § 3617.

The district court determined that it did not need to reach the issue of whether the Restoration Provisions were reasonable under the FHA because appellants' complaint did not allege facts sufficient to show either an intent to discriminate or to constitute disparate impact discrimination. Because we conclude that the reasonableness of the Town's accommodations is in issue, but a valid claim for retaliation has not been alleged, we affirm in part and vacate in part.

BACKGROUND

In reviewing a district court's Fed. R. Civ. P. 12(b)(6) dismissal of a complaint, we of course accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).[3]

---

[3] Appellants moved for summary judgment in their favor in the district court and accompanied that motion with a variety of documents, including records of various Town agencies and offices. These records are integral to the complaint, San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808-09 (2d Cir. 1996), and we refer to them where needed in our discussion of the facts. We also rely on appellants' summary judgment papers to the extent they clarify the allegations of the complaint with regard to costs of installation and removal of the structures, facts that do not affect our disposition of this appeal.

The complaint alleges that, in 2009, Colleen and John Austin decided to move from North Carolina to up-state New York, with their two sons. Their older son, Cole, has multiple serious disabilities as a result of being born prematurely, including cerebral palsy and global developmental delays. He is non-verbal and visually impaired.

Appellants sought to move to an area with good public schools and chose the Town of Farmington. Appellants became interested in a newly-constructed home in the Town's Auburn Meadows development. Appellants wanted to install a fence in order to keep their son safely within their yard and to build an above-ground pool because of the benefits aquatic therapy affords to children with cerebral palsy.

Before purchasing the home, appellants learned that there was a Town ordinance restricting "patio lots," like that of the house in question, in the subdivision. The restriction in question was passed as part of the rezoning and authorization necessary to the Auburn Meadows development. The authorization contained numerous provisions relating to open space, trails, etc. The provision at issue here prohibited accessory structures, such as pools and fences, "within the patio home portion of the site" but allowed such structures on other (larger) lots "within the rear yard portion of the site provided

4

that such rear yards are screened from adjacent public rights-of-ways." Appellants' lot was subject to the full prohibition.

Upon learning of the land-use restriction on the property, Colleen Austin called the Farmington Town building department to seek a variance. The Code Enforcement Officer told her that appellants would have to request such a variance from the Town Board. Appellants bought the home confident that they would be able to secure the necessary permission.

In June 2012, after negotiations with appellants, the Town Board passed a Resolution entitled "Granting a Temporary Accommodation to install a Fence and an Above-Ground Swimming Pool to the Owners of 1685 Lillybrook Court . . . in the Auburn Meadows Subdivision . . . ."[4] However, the Resolution also stated that the fence and swimming pool must "be wholly removed" from the property "within 21 days" of the disabled child ceasing to live on the property, of appellants ceasing to own the property "whether by conveyance, death or any other reason," or of anyone being added as an additional owner of the property. The Resolution further stated that the fence and pool were to be removed "at the expense of the Austin's [sic] or of the new

---

[4] The Town Board, established under New York Town Law § 60, has the authority to adopt, amend, and repeal zoning regulations. See N.Y. Mun. Home Rule Law § 10(1)(ii)(a); N.Y. Stat. Local Gov'ts § 10(6); Town of Farmington, N.Y. Zoning Code ch. 165 (1980).

owners of [the property]."[5]  The Resolution stated that appellants had the right to bring a legal challenge to the Restoration Provisions.

During the summer of 2012, appellants installed the fence and pool.  After the Town granted appellants' request for a second variance, they added a deck to the pool.  The second Resolution contained the same Restoration Provision.  The total cost for installing the fence, pool, and deck, as well as accompanying landscaping work, was over $27,000.  Appellants have been quoted a price of $6,630 to remove the fence, pool, and deck and repair the damage to the yard.

On June 11, 2014, appellants filed the present action challenging the Restoration Provisions and seeking declaratory and injunctive relief against their enforcement.  Appellants alleged two claims based on the FHA:  (i) discrimination by the Town's denial of "a reasonable modification pursuant to 42 U.S.C. Section 3604(f)(3)(A)," and (ii) retaliation by the Town "for asserting their rights under federal law in violation of 42 U.S.C. Section 3617."

---

[5] The Resolution stated that if the fence and pool were not removed during the specified time period, "the Town [would] be able to bring [an] action to enforce the removal of the fence and the above-ground swimming pool and whoever is the owner of 1685 Lillybrook Court at that time shall be liable for all of the Town's expenses in bringing such legal action, including, but not limited to, costs and reasonable attorney's fees."

On June 8, 2015, the district court dismissed appellants' complaint pursuant to the Town's Fed. R. Civ. P. 12(b)(6) motion. The court concluded that there were "simply no facts alleged that evince a discriminatory intent in requiring that plaintiffs restore their property to its original condition once the need for the modifications is no longer present." Austin v. Town of Farmington, 113 F. Supp. 3d 650, 655 (W.D.N.Y. 2015). Further, the court held that "[p]laintiffs fail[ed] to support, beyond their conclusory assertions, that requiring them to bear the cost of removal of the fence and pool is in some way based upon their son's disability when the initial grant of a variance to build the pool along with a fence was granted knowing that plaintiffs' son was disabled." Finally, the court stated that "plaintiffs have not sufficiently alleged a violation of the FHA under the disparate-impact analysis . . . . Here, there has been no showing that the restoration requirement does not apply to non-disabled individuals."

DISCUSSION

As noted, we review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6). See Chambers, 282 F.3d at 152. To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

7

In 1988, Congress amended the Fair Housing Act of 1968 to extend its coverage to housing discrimination based on an individual's disability.

Section 3604(f)(3) provides:

> For purposes of this subsection, discrimination includes --
>
> (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.
>
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or
> . . . .

42 U.S.C. § 3604(f)(3).  Neither Subsection (A) nor Subsection (B) requires that the denial of modifications or accommodations be the result of a discriminatory animus toward the disabled. Both require only that the requested modification or accommodation be reasonable and that the denial(s) result, in the case of Section 3604(f)(3)(A), in diminishing the disabled person's full enjoyment of the premises or, in the case of Section 3604(f)(3)(B), in so diminishing that person's use and

8

enjoyment of the premises as to constitute a denial of equal opportunity.

The Town does not challenge the applicability of the FHA to the ordinance prohibiting accessory structures on patio lots in the Auburn Meadows development. Indeed, the House Report accompanying the 1998 Amendments to the FHA specifically stated that the Act was intended "to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals [disabled persons] to live in the residence of their choice in the community." H.R. Rep. No. 100-711, at 24 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2185; see, e.g., City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 729-30 (1995) (applying FHA provisions to a city zoning code).

Appellants argue that the Restoration Provisions violate Subsection (A). They argue that (A)'s provision allowing landlords to require restoration of interiors as a condition to a modification supports an inference that all other restoration requirements are per se unreasonable under the FHA.

However, a plain reading of the statute reveals that there is no per se rule against land-use regulators including restoration provisions in zoning variances or other land-use accommodations. Subsections (A) and (B) must be read as a whole,

9

*Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) ("[W]hen construing the plain text of a statutory enactment, we do not construe each phrase literally or in isolation [but rather] attempt to ascertain how a reasonable reader would understand the statutory text, considered as a whole."), and when that is done, it is clear that the subsection that governs the present appeal is (B). It is true that appellants were seeking the right to install modifications to the premises, but their request for a variance from the patio lot restrictions was a request, in the language of (B), for an "accommodation[] in rules [or] policies." 42 U.S.C. § 3604(f)(3)(B). Subsection (B) contains nothing, either directly or by negative inference, outlawing restoration provisions. In short, it is clear that (A)'s mandates are limited to housing providers while (B), which does not mention restoration, also applies to private or public entities that do not own but promulgate rules or policies governing various areas of land. Of course, some entities may be both housing providers and rule makers. However, in the present circumstances, the Town of Farmington is clearly not a housing provider but, rather, is only a land-use regulator.[6]

Appellants rely heavily upon a "Joint Statement of the Department of Housing and Urban Development and the Department of

---

[6] We note that the Supreme Court has held that municipalities may be considered both regulators and housing providers. *Edmonds*, 514 U.S. at 729-30.

Justice" regarding "Reasonable Modifications under the Fair House

Act."[7]  Joint Statement of the Department of Housing and Urban

Development and the Department of Justice, <u>Reasonable

Modifications Under the Fair Housing Act</u> (Mar. 5, 2008),

www.hud.gov/offices/fheo/disabilities/reasonable_modifications_ma

r08.pdf ("Joint Statement on Reasonable Modifications").  This

reliance is misplaced.  The Joint Statement on Reasonable

Modifications is inapplicable because the instant appeal concerns

an accommodation, not a modification.  Nonetheless, the

document's description of the relationship between Subsections

(A) and (B) remains informative, and is described as follows:

> [A] reasonable *modification* is a structural
> change made to the premises whereas a
> reasonable *accommodation* is a change,
> exception, or adjustment to a rule, policy,
> practice, or service.  A person with a
> disability may need either a reasonable
> accommodation or a reasonable modification,
> or both, in order to have an equal
> opportunity to use and enjoy a dwelling . . .

<u>Id.</u> at 6 (emphasis in original).  <u>See also</u> Joint Statement of the

Department of Housing and Urban Development and the Department of

---

[7] We note that the Joint Statement on Reasonable Modifications is a policy statement, rather than an authoritative interpretation of Section 3604.  Therefore, it does not carry the force of law and is not accorded <u>Chevron</u> deference.  <u>See Christensen v. Harris Cnty.</u>, 529 U.S. 576, 587 (2000) ("[I]nterpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law[,] do not warrant <u>Chevron</u>-style deference."); <u>see also Barnhart v. Walton</u>, 535 U.S. 212, 221-22 (2002).  It does, however, still qualify for the lower deference accorded by the Supreme Court's ruling in <u>Skidmore v. Swift & Co.</u>, which gives deference to interpretive rules according to their persuasiveness, evaluated under a four factor test.  323 U.S. 134, 140 (1944) (evaluating persuasiveness of interpretive rules according to (1) the thoroughness of the agency's investigation; (2) the validity the agency's reasoning; (3) the consistency of the agency's interpretation over time; and (4) other persuasive powers of the agency).

Justice, Reasonable Accommodations Under the Fair Housing Act (May 17, 2004), www.hud.gov/offices/fheo/library/huddojstatement.pdf ("Joint Statement on Reasonable Accommodations"), at 6 (defining "reasonable accommodation"). Applying this framework to the present matter, appellants sought an exception -- variance -- to the Town's ordinance prohibiting accessory structures on patio lots in the Auburn Meadows development, which exception would allow them to make physical modifications to their property -- i.e., install a fence, pool, and deck. See Edmonds, 514 U.S. at 729-30 (applying Section 3604(f)(3)(B) to a city zoning code).

Viewing the Town's Resolutions as accommodations governed by Subsection (B), we now turn to appellants' challenge to the Restoration Provisions. In dismissing appellants' complaint, the district court concluded, seemingly as a matter of law, that the Town's "refusal to remove the restoration condition [did] not constitute a refusal to make a reasonable accommodation for plaintiffs' disabled son in its zoning policy." Austin v. Town of Farmington, 113 F. Supp. at 655. The court also determined that appellants failed to state a claim under the FHA because they alleged neither an intent to discriminate, nor facts sufficient to constitute disparate-impact discrimination. See id. at 655-56. Because of these failures, and the fact that appellants were not excluded from purchasing or using the housing

12

of their choice because of the restoration requirement, the court granted appellees' motion to dismiss the complaint. Id. at 656.

The language of Section 3604(f)(3)(A), (B) compels a different conclusion. The subsections define unlawful discrimination, in the present context, as refusing a reasonable accommodation allowing appellants to make reasonable modifications to their property to afford their disabled child an equal opportunity to enjoy fully the use of the property. The unlawful act, therefore, is the refusal to make a reasonable accommodation without regard to the state of mind underlying the refusal.

Appellants do not challenge the accommodation made by the Town to the extent it allowed them, as they requested, to build a fence, install a pool, and add a deck to the pool. Their challenge is simply to the portion of the Town's Resolutions requiring the removal of these modifications. The Town, in short, does not want the variance to "run with the land" -- to be taken advantage of by later occupants without a disability -- while appellants want to avoid the cost of removal and to capture any increase in the value of the property caused by the modifications and/or by permanently freeing the lot in question from the restrictions applicable to the neighborhood in question. Pl.'s Br. 7.

13

It is certainly true, as the district court reasoned, that the Restoration Provisions did not directly deprive the disabled child of his rights under the FHA.  However, we believe that a trier of fact might find that a restoration requirement in some circumstances so burdens a party wanting to modify a property to accommodate a disabled person that it amounts to a refusal of a reasonable accommodation.  See Logan v. Matveevskii, 57 F. Supp. 3d 234, 257 (S.D.N.Y. 2014) (asserting that "a refusal of a request for a reasonable accommodation can be both actual or constructive," such as where request for accommodation is met with indeterminate delay instead of outright denial (internal quotation mark omitted)).  This would violate the FHA even though the authority imposing a restoration requirement believed in good faith that it was fully accommodating the disabled individual.

The issue of whether the failure of the Town to allow the modifications to continue in place after the child left the property was reasonable therefore can neither be avoided nor decided as a matter of law on the pleadings.  See, e.g., Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 578 (2d Cir. 2003); see also Hollis v. Chestnut Bend Homeowners Ass'n, 760 F.3d 531, 541 (6th Cir. 2014) ("[T]he crux of a reasonable-accommodation . . . claim typically will be the question of reasonableness.").  Whether the Town's Resolutions are reasonable in light of appellants' needs requires a complex balancing of

14

factors. Reasonableness analysis is "highly fact-specific, requiring a case-by-case determination." Hovsons, Inc. v. Twp. of Brick, 89 F.3d 1096, 1104 (3d Cir. 1996) (quoting United States v. Cal. Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1418 (9th Cir. 1994)).

The reasonableness issue here cannot be determined on the pleadings because the relevant factors are numerous and balancing them requires a full evidentiary record. A requested accommodation is reasonable where the cost is modest and it does not pose an undue hardship or substantial burden on the rule maker. See Olson v. Stark Homes, Inc., 759 F.3d 140, 156 (2d Cir. 2014); see also Joint Statement on Reasonable Accommodations at 7 (explaining that accommodation is not reasonable "if it would impose an undue financial and administrative burden on the [rule maker] or it would fundamentally alter the nature of the [rule maker's] operations"). Applied to the context of land-use regulations, relevant factors may include the purposes of the restriction, the strength of the Town's interest in the land-use regulation at issue, the need for uniformity, the effect of allowing later landowners without a disability to enjoy the lack of a restriction on pools, decks, and fences, while all their neighbors are subject to it, the likelihood that a permanent variance will cause other landowners subject to the regulation to

15

seek similar variances, etc.[8]  Balanced against those factors is the cost of removal -- again, whether out of pocket or in a reduced sale price.[9]  We say no more because there are undoubtedly a host of relevant factors looking in both directions to be considered.  Moreover, we do not want to make gratuitous statements that may seem to address other of the multitude of land-use regulations, e.g. historic landmarking, etc.

However, we affirm the dismissal of appellants' retaliation claim.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Unlike a claim under Subsection 3604(f)(3), a retaliation claim does require a showing of a particular state of mind, i.e., a retaliatory motive.  See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 53-55 (2d Cir. 2002); see also Zhu v. Countrywide Realty Co., 165 F. Supp. 2d 1181, 1198 (D. Kan. 2001) ("[I]n order to make out a prima facie case under Section 3617, [a] plaintiff must demonstrate that intentional discrimination motivated defendants' conduct, at least in

---

[8] The requisite reasonableness analysis is, in this matter, under Subsection (B).

[9] Sometimes, of course, the freedom from an otherwise generally applicable restriction may greatly enhance the value of a particular piece of property.

part."). No non-conclusory allegation of fact showing such a motive is in the complaint. In their brief, appellants argue that the lack of a proffered justification for the Restoration Provisions and the existence elsewhere in the Town of lots smaller than appellants' property without a prohibition on accessory structures is sufficient to allege a prima facie case of retaliation. We disagree. The Restoration Provisions on their face simply restore the requirements applicable to all such properties in the area once the needs of appellants' disabled child are not an issue. Their purposes are obvious and reflected in the documents accompanying appellants' own motion for summary judgment. Town-wide differences in the applicability of various land-use regulations to various developments and lots preexisted appellants' request for a variance, and the Auburn Meadows regulations apply to appellants' neighbors as well as to them. There is, therefore, no allegation supporting the existence of a retaliatory motive.

## CONCLUSION

For the foregoing reasons, the judgment granting the Town's motion to dismiss is affirmed in part and vacated in part. Each party should bear its own costs.